People v Guilermo P. (2020 NY Slip Op 03464)





People v Guilermo P.


2020 NY Slip Op 03464


Decided on June 18, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2020

Gische, J.P., Webber, Gesmer, Kern, JJ.


11229 1141/16

[*1] The People of the State of New York, Respondent,
v
Guilermo P. also known as Guilermo N., Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Jody Ratner of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Michael D. Tarbutton of counsel), for respondent.



Judgment, Supreme Court, New York County (Bonnie G. Wittner, J.), rendered April 26, 2017, convicting defendant, upon his plea of guilty, of robbery in the third degree, and sentencing him, as a youthful offender, to a term of 60 days with 5 years probation, modified, on the law, to the extent of vacating the DNA databank fee imposed as a probation condition, and otherwise affirmed.
Defendant was charged with robbery in the third degree
(Penal Law § 160.05) and burglary in the third degree (Penal Law § 140.20) in connection with a July 12, 2015 incident in which he stole food from a Dunkin' Donuts store. Specifically, it was alleged that when the store employee refused defendant's request that he be given a sandwich, defendant threw a banana at the employee, jumped over the counter, used a derogatory term to the employee, stated that he had a gun and then proceeded to leave the store with the sandwich. On March 24, 2017, defendant appeared with counsel before Justice Wittner, withdrew his plea of not guilty, and entered a plea of guilty to robbery in the third degree in full satisfaction of the indictment. Defendant was promised youthful offender adjudication, 60 days incarceration and five years probation.
We find that defendant did not preserve his challenge to his plea allocution, and we decline to review it in the interest of justice. The narrow exception to the preservation rule explained in People v Lopez (71 NY2d 662, 665-666 [1988]) does not apply because defendant's factual recitation did not negate any element of the crime or cast significant doubt on his guilt. As an alternative holding, we find that the plea was knowing, intelligent and voluntary.
We perceive no basis for reducing the sentence imposed. The determination of an appropriate sentence requires consideration of, "among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation and deterrence" (People v Farrar, 52 NY2d 302, 305 [1981]). The sentencing court has broad discretion with regard to the imposition of a sentence (People v Rosenthal, 305 AD2d 327, 329 [1st Dept 2003]). This Court possesses "broad, plenary powers to modify a sentence that is unduly harsh or severe under the circumstances, in the interest of justice, even though the sentence falls within the permissible statutory range" (id.; accord People v Delgado, 80 NY2d 780, 783 [1992]; CPL 470.15[6][b]). Further, we may substitute our own discretion for that of the sentencing court, even if the sentencing court did not abuse its discretion (see Delgado, 80 NY2d at 783; Rosenthal, 305 AD2d at 329). Here, we find no basis to reduce the probationary sentence imposed as advocated by defendant and the dissent.
Both the dissent and defendant understate the seriousness of defendant's offense. What the dissent refers to as minor, was in fact a forcible taking of property. Defendant jumped over the store counter and threatened the use of a gun, after being told that he would not be given a sandwich. Physical harm is not an element of the crime plead to by defendant. These are not [*2]bare allegations but rather sworn to statements. Any hearsay in the felony complaint or failure of the People to immediately convert the felony complaint is of no consequence as defendant entered a plea of guilty under the indictment. An indictment which obviously was based upon sworn testimony by witnesses. Notably, defendant does not challenge the sufficiency of the evidence presented to the grand jury.
Contrary to the arguments set forth by the dissent, the court while considering defendant's actions, his criminal history, which includes convictions for minor drug crimes in Pennsylvania, an arrest for absconding while at liberty in this case, and several pending cases also obviously took into consideration defendant's age. Further, defendant benefitted from a very favorable plea bargain, as a result of which he was adjudicated a youthful offender, sentenced to a term of probation and what amounted to time served.[FN1]
Finally, the dissent argues that the People's "sunny portrayal of probation ignores the onerous conditions of probation which create a risk that defendant, without committing a crime, could be incarcerated." According to the dissent, the risk is compounded by the current climate. The dissent ignores the fact that the supervision and guidance provided by probation can be beneficial to defendant. Further, while a violation could result in a term of incarceration, it is not mandatory and is ultimately up to the discretion of the sentencing court which would also be mindful of the current climate (see People v Hobson, 43 AD3d 1179 [2d Dept 2007]).
As the parties agree, and as the sentencing court itself observed, a DNA databank fee is not authorized where a defendant is adjudicated a youthful offender. Accordingly, no such fee was authorized as a condition of probation.
All concur except Gesmer, J. who
dissents in a memorandum as follows:




GESMER, J. (dissenting)


I respectfully dissent in part. Given the particular circumstances of this case, defendant's sentence of 60 days in jail and five years of probation is excessive. In the interests of justice, I would reduce the non-incarceratory portion of his sentence to three years of probation.[FN2]
At 6:15 am on July 12, 2015, his 18th birthday, defendant entered a Dunkin' Donuts and forcibly took a breakfast sandwich without paying for it. The police arrested defendant 20 minutes later, and they recovered a bag of marijuana from his pocket. At 9 a.m., when interviewed by Detective Mazza, defendant said, "All this over a sandwich." The record before us does not disclose that defendant had any prior contact with the criminal justice system.
At 2:25 p.m. the same day, Detective Mazza signed a misdemeanor complaint charging defendant with petit larceny, a class A misdemeanor; menacing in the third degree, a class B misdemeanor; and unlawful possession of marijuana, a violation. The maximum sentences for the three charges were, respectively, 364 days in jail and probation of up to three years; three months in jail and one year of probation; and a fine of no more than $50. Detective Mazza based the factual allegations in the complaint on a conversation with an employee of Dunkin' Donuts. The record before us does not show that the complaint was ever converted to an information by submission of a nonhearsay sworn statement with regard to the facts of the incident as recited by [*3]Detective Mazza. Defendant was released on his own recognizance.
For the next eight months, defendant, a resident of Pennsylvania, showed up for all court appearances. On March 17, 2016, a grand jury issued an indictment charging defendant with robbery in the third degree and burglary in the third degree, both class D felonies. Under the indictment, defendant faced a possible indeterminate prison sentence of 2 1/3 to 7 years, a seven-fold increase in the period of incarceration that could be imposed on him.
After the indictment, there were four more scheduled court dates, on March 30, April 21 and June 8 and July 21. On July 21, for the first time, defendant did not appear for the scheduled court appearance, which was more than a year after the incident. The court issued a bench warrant. Two months later, defendant was returned on a warrant, and his bail was set at $2,500 cash or $5,000 secured bond. When his mother was finally able to post bail on December 10, defendant had spent 81 days in jail.
On March 24, 2017, defendant pled guilty to robbery in the third degree, acknowledging during the allocution that he "forcibly stole" the sandwich on July 12, 2015. The presentence report, issued on April 25, 2017, showed that defendant had one conviction in Pennsylvania in 2016, for drug possession, and two pending cases in Pennsylvania, arising out of arrests in 2016 and 2017. On April 26, 2017, he was sentenced as promised as a youthful offender to 60 days in jail and 5 years of probation. Defendant is currently serving the probationary portion of his sentence, which is scheduled to expire on April 22, 2022.
Defendant asks that we reduce his sentence to a conditional or unconditional discharge, or a shorter period of probation. Given the circumstances of defendant's crime, his youth, and the interests of justice, the non-incarceratory portion of his sentence should be reduced to three years of probation (see People v Rosenthal, 305 AD2d 327, 329 [1st Dept 2003] [this Court "possesses broad, plenary powers to modify a sentence that is unduly harsh or severe under the circumstances, in the interest of justice, even though the sentence falls within the permissible statutory range"], citing People v Delgado, 80 NY2d 780, 783 [1992]).
In deciding whether a sentence is excessive and a reduced sentence is appropriate, we give "due consideration [] to, among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation and deterrence" (People v Farrar, 52 NY2d 302, 305 [1981]; People v Martinez, 124 AD2d 505, 506 [1st Dept 1986]).
Given the crimes with which defendant is charged, he is eligible for a sentence of an unconditional discharge, a conditional discharge, or three years of probation. Under the circumstances of this case, it is in the interests of justice to reduce his sentence to three years of probation.
First, the facts of the crime charged are indisputably minor: defendant took a sandwich without paying for it. Defendant was arrested almost immediately, demonstrating that defendant was acting impulsively, and without any premeditation or planning.
The People argue that the "reality" of the crime was "more serious" because defendant "jumped over the counter, [and] shouted that he had a gun." However, that specific allegation appears only in the hearsay complaint, in which Detective Mazza states that a Dunkin' Donuts employee made that allegation to him [FN3]. Contrary to the statement in the majority opinion, there is no first hand sworn statement to that effect, and, in fact, in the next eight months, the complaint was never converted to an information by means of a sworn statement.
Certainly, in order for the grand jury to have indicted defendant for robbery in the third degree, the People would have had to present nonhearsay evidence to show that defendant stole the sandwich "forcibly" (Penal Law § 160.05). However, the record does not indicate what defendant's forcible actions consisted of. Moreover, there are no allegations that the store [*4]employee or anyone else suffered any harm.
Second, had the People not elevated this minor case to a felony, the sentence to which defendant agreed could not have been imposed. On the original misdemeanor charges, a probationary period of three years is the maximum that could have been imposed.
Third, defendant's young age at the time weighs heavily in favor of reducing his sentence (see Johnson v Texas, 509 US 350, 367 [1993][the "lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults . . . (which) often result in impetuous and ill-considered actions and decisions"]; see also Graham v Florida, 560 US 48, 68 [2010] ["developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"]). Defendant's actions at the restaurant epitomize an adolescent's lack of emotional development and maturity. Defendant had turned just 18 on the day of the incident; given that his conduct was "impetuous" and "ill-considered," defendant's lessened culpability as a youth warrants our leniency.
Fourth, the People paint defendant as a hardened criminal at the time of the theft in this case, because he had a conviction in Pennsylvania,[FN4] and because he absconded in this case. However, the conviction in Pennsylvania was for a minor drug offense which occurred almost a year after the Dunkin' Donuts incident; the record does not show that he had had any contact with the criminal justice system before that incident. Moreover, defendant faithfully appeared at all of the court appearances during the eight months that the People were prosecuting this matter as a misdemeanor, and then appeared for three more appearances after it had been converted to a felony. He failed to appear for the first time more than a year after the underlying incident, and long after this simple matter should have been concluded. Indeed, had defendant been offered at arraignment the plea which he eventually took, he would have completed his sentence by now.
Fifth, defendant's decision to plead guilty to a felony was undoubtedly influenced by his having already served 81 days after the court set bail when he was returned on a warrant. I would argue that an 81-day stay at Rikers Island is neither in the interest of justice nor a proper allocation of scarce jail resources given defendant's crime. In addition, defendant's period of incarceration resulted from his bail having been set at $2,500 cash or $5,000 secured bond. It is hardly surprising that it took defendant's family a few months to come up with the bail. Moreever, under the recently enacted Bail Reform Act (L 2019, ch 59, JJJ), the court would not have had authority to set cash bail at all, for two reasons. First, the two class D felonies with which defendant was charged are not now eligible for cash bail (see CPL 510.10). Second, the court could not have set monetary bail unless, as is relevant here, it found by "clear and convincing evidence" that defendant "persistently and willfully failed to appear after notice of scheduled appearances in the case before the court" (CPL 530.60[2][b][i]). Here, the record shows that defendant missed only one court date, after appearing at every court date for 11 months, so there is no evidence at all that his absence was either "persistent[]" or "willful[]".
Finally, the People paint a sentence of probation as beneficial to defendant, suggesting it would guide him through a difficult stage of life and foster his rehabilitation. This sunny portrayal of probation ignores the onerous conditions of probation which create a risk that defendant, without committing a crime, could be incarcerated (see CPL 410.70[5]; Penal Law § 60.01[4]). This could lead to a very harsh result in the current climate, especially given the minor nature of his crime (Jan Ransom, Jailed on a Minor Parole Violation, He Caught the Virus
and Died, NY Times, April 9, 2020).
Based on all of these circumstances, the non-incarceratory portion of defendant's sentence should be reduced to a three-year period of probation.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 18, 2020
CLERK



Footnotes

Footnote 1:The dissent's arguments that defendant's decision to plead guilty to a charged felony was based upon his having been incarcerated for 81 days (for absconding while at liberty in this case) prior to his family's ability to post bail which was prior to the Bail Reform Act (L 2019, ch 59, JJJ) is pure speculation and not supported anywhere in the record.

Footnote 2:Having served the incarceratory portion, defendant acknowledges he cannot challenge it (People v Papanye, 159 AD3d 482, 483 [1st Dept 2018], lv denied 31 NY3d 1085 [2018]).

Footnote 3:The People also cite to the presentence report. However, that too was based on hearsay, since the report was not based on any interviews with witnesses but only on the hearsay court documents.

Footnote 4:The People also claim that defendant had other convictions but none of those appear in the record before us.